HEYWARD *v.* HATFIELD *et al.*

No. 11069. APRIL 18, 1936.

*Bynum & Frankum,* for plaintiff.

*M. J. Yeomans, attorney-general, B. D. Murphy,* and *Hamilton Lokey,* for defendants.

BECK, Presiding Justice. B. C. Heyward brought an equitable petition against W. A. Hatfield and James Moody, in which he alleged that before 1906 he had a deed of conveyance to the land described in the petition and was in actual possession thereof, when the General Assembly of Georgia enacted a law providing for the establishment and maintenance of agricultural and industrial schools in each congressional district in the State (Ga. L. 1906, p. 72), and for the appointment of trustees for these schools; that in accordance with the provisions of that act the Governor of Georgia appointed, as trustees for the school that was then to be established in Habersham County as the Ninth District A. and M. School, H. H. Perry, R. L. Rogers, and certain other named persons; that after the appointment of these trustees the plaintiff exe-

cuted and delivered to them a deed of conveyance containing the following recital: "Witnesseth that in pursuance of the act of the General Assembly of Georgia, approved August 18, 1906, providing for the establishment and maintenance of an industrial and agricultural school in each congressional district of the State, the parties of the second part [the named trustees] were duly appointed as trustees of the school to be established in and for the Ninth Congressional District of Georgia; and whereas said trustees, party of the second part, acting in connection with the Governor, after considering the various offers submitted, did accept the offer in behalf of Habersham County, for the location of the school for the Ninth District, and the same was duly declared· as located in said County of Habersham, upon the tract of land hereinafter described. . . To have and to hold the same forever in fee simple; and the title to said property the said B. C. Heyward, his heirs, executors, and administrators, shall and will forever ·defend by virtue of these presents." There was no money consideration for the deed. It further appears from the petition that after the conveyance was made the trustees proceeded to establish and operate the school from about 1908 until the Board of Regents of Georgia abandoned its operation about June 1, 1933. The plaintiff contends that the land was trust property during and while it was operated by the trustees and the Board of Regents, but when the Board of Regents ceased operating the school the plaintiff was entitled to possession of the land as his trust property. The defendants, Hatfield and Moody, have had possession of the land since the school was abandoned by the Board of Regents, and they are using and enjoying the rents and profits therefrom. The plaintiff prays judgment for the land in question, and for the rents and profits therefrom since June, 1933. A general demurrer to the petition was sustained, and the plaintiff excepted.

■   The foregoing statement sets forth the substance of the petition so far as it is necessary to consider it. The attorney-general of the State filed a general demurrer. The court sustained the demurrer, and this court is of the opinion that the court did not err. The deed of the plaintiff conveyed the land in fee simple to the parties named as trustees. It is true that it was said that it was conveyed for the uses and purposes set forth in the act of the General Assembly referred to (Ga. L. 1906, p. 72). The deed

recites that it is an indenture between Heyward of the first part, and certain named trustees of the second part; that the named persons were appointed trustees pursuant to an act of the General Assembly approved August 18, 1906, which provided for the establishment and maintenance of an industrial and agricultural school in each congressional district, as trustees of the school to be established in and for the Ninth Congressional District; that such trustees, acting in connection with the Governor, had accepted the offer submitted in behalf of Habersham County, and had duly declared the school should be located in the County of Habersham; that therefore the grantor, in consideration of the sum of $5 and as an inducement to locate the school in the County of Habersham, did grant, bargain, etc., "to the trustees aforesaid, and their successors in office, for the trusts and uses specified in said act, approved August 18, 1906," the land described, the habendum clause being as follows: "To have and to hold the same in fee simple, and the title to said property said B. C. Heyward, his heirs, executors, and administrators, shall and will for ever defend by virtue of these presents." We are of the opinion that this deed simply conveyed a fee-simple title to the property to the named persons as public officers of the State, trustees of the Ninth District A. and M. School, and divested the grantor, Heyward, of all his right, title, and interest in or to the property. The deed contained no reversionary clause of any sort. It can not therefore be construed as a grant of an estate on condition subsequent. There being no grant of an estate on a condition subsequent, Heyward had no right to re-enter, and holds no title to the property, and his suit must fail. Heyward is suing for the land, basing his action upon his alleged title. The prayer of his petition is that he have judgment for the premises in dispute, together with the rents and profits. If he had divested himself of the title, and had not reacquired the title, then he could not maintain this action, whether the deed creates a trust or not. His deed did not create a trust of the character insisted on by him. The declaration in the deed that the property is conveyed to the named trustees "for the trusts and uses specified in said act," marks out the capacity in which the trustees hold the title. It means that the named persons are not to hold the land in their individual capacities, or as proprietors, but that they hold it in their official capacity as trustees created by

an act of the General Assembly. The trusts and uses referred to in the deed are those created and established by an act of the General Assembly. The trustees named in the deed were not made trustees by the deed, but were made trustees by law. The object of the bounty of the grantor is not defined by the deed, neither does he undertake to mark out the person or class of persons who shall be the beneficial owners of the property. These elements are essential to the creation of an express trust.

The deed executed by Heyward must be construed under and in the light of the act of 1906, which provided for the establishment of the A. and M. School. Georgia Laws, 1906, p. 72. Under that act the Governor was authorized to establish an industrial and agricultural school in each congressional district, and to appoint trustees, to hold office for the term of six years and until their successors were appointed, for each school; the board to consist of one trustee from each county in the congressional district. The Governor was authorized "to receive from any county, or any of the citizens thereof, a donation of a tract of land in such county," to be not less than 200 acres, and also to receive additional donations in the way of buildings or money. If there were two or more offers of such donations, the Governor was empowered, with the aid of the trustees of the school, to select which offer to accept, "taking into consideration the *title,* value, the centralness of location, accessibility and suitableness in any respect for the purpose intended." It was expressly provided that the school should be established on the tract selected, "upon the acceptance of any such donation, and the execution of proper deeds vesting title in the trustees," but that if the deeds should "not be made to the satisfaction of the Governor," he should have a right to select another locality. A reference to section 3 of the act will show that it was the purpose of the statute to provide for the appointment of trustees, with power to control and manage the schools provided for, and to make rules and regulations for such purpose. It was further the intention of the act that whatever site should be selected for the establishment of a school should become the absolute property of the trustees. This is true because section 4 of the act provides, as just quoted, that one of the things to be taken into consideration in selecting the site was the title to the property offered, and another was the value of the property offered. That section

further expressly provided that the school should be located on the proffered site upon the execution of a proper deed "vesting title in the trustees." The expression contained in the deed, "for the trusts and uses specified in said act," does not itself create any trust estate; and when it is considered in connection with the act, the language can not be given such construction. The language quoted simply defines and states the purpose for which the property is granted and the capacity in which the grantees hold it. The public purposes for which the trustees were to hold the land were not created by the instrument, but by the act of the General Assembly.

In *Hollomon* v. *Board of Education of Stewart County*, 168 *Ga.* 359 (supra), it was held: "The conveyance by warranty deed to the Board of Education of Stewart County of an acre of land in consideration of $5 to the grantor in hand paid, the land 'to be used by said Board of Education as a public school for whites,' with the habendum clause, 'To have and to hold the same for the uses aforesaid forever,' does not create an estate upon condition subsequent or an estate with a conditional limitation. (*a*) Such conveyance did not convey a mere easement. (*b*) An implied trust did not arise in favor of the grantor in this deed from the fact that the Board of Education had discontinued the operation of a school for whites on this lot." In the opinion it was said that the deed contained the language that the lot conveyed was "to be used by said board of education as a public school for whites," and the said board is to have and to hold the same for said use. It was further said: "Is it manifest from this provision that it was the intent of the grantor to create a conditional estate? A condition subsequent will not be raised by implication from a declaration in a deed that the grant is made for a special or particular purpose, without being coupled with words appropriate to make such a condition. Where the grant is for a named purpose only, with no words of reverter or of limitation, such grant is a mere declaration of the purpose to which the land conveyed was intended to be used, and in such a case there is no reversion." The writer of the opinion just quoted cited many cases in support of the proposition. In *Tift* v. *Savannah, Florida & Western Ry. Co.*, 103 *Ga.* 580 (30 S. E. 266), it was held that a deed which conveyed certain land to a railroad company "for depot purposes," and then

specified certain conditions as to the location of the right of way and certain reservations as to the use of the same for streets, "passed to the grantee an absolute title to the two lots mentioned, which was not qualified or affected by the use of the words, 'for depot purposes' following the description of these two lots, nor by the use of the words 'with the accompanying conditions and reservations' in the beginning of the deed." · In view of these decisions and other text-books and cases that might be cited, we are of the opinion that the deed under consideration in this case did not create such a trust as would cause the property, upon a cessation of its first uses, to revert to the grantor, there being no reversionary clause; and for that reason the court did not err in sustaining the general demurrer and dismissing the case. This case differs materially from *Rogers* v. *Pitchford*, 181 *Ga.* 845 (184 S. E. 623) in which the deed in question did not contain the clause as contained in the deed now under consideration, "to have and to hold the same forever in fee simple."

■ We will not discuss the question whether or not the attorney-general was authorized to appear for the defendants in this case. He filed a general demurrer. There was no objection in the court below to that demurrer being considered, on the ground that it was filed by the attorney-general, and we will not take up for consideration that question here.

*Judgment affirmed. All the Justices concur.*